IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WIRELESS AGENTS, L.L.C., | § | |
| | § | |
| Plaintiff-Counterdefendant, | § | |
| | § | Civil Action No. 3:05-CV-0094-D |
| VS. | § | |
| | § | |
| T-MOBILE USA, INC., et al., | § | |
| | § | |
| Defendants-Counterplaintiffs. | § | |

MEMORANDUM OPINION
AND ORDER

In this patent infringement action concerning United States Patent No. 6,665,173 ("the '173 patent") entitled, "Physical Configuration of a Hand-Held Electronic Communication Device," plaintiff-counterdefendant Wireless Agents, L.L.C. ("Wireless") moves for a preliminary injunction, presenting the dispositive question whether it will suffer irreparable harm if an injunction is not granted. Affording Wireless a presumption of irreparable harm and concluding that defendants-counterplaintiffs have rebutted the presumption, the court holds that Wireless will not suffer irreparable harm and denies the motion.[1]

---

[1]Wireless's preliminary injunction motion is before the court under the procedure permitted by Fed. R. Civ. P. 43(e) and is being decided on the papers, without an evidentiary hearing. *See, e.g.*, *Jones v. Bush*, 122 F.Supp.2d 713, 715 (N.D. Tex.) (Fitzwater, J.), *aff'd*, 244 F.3d 134 (5th Cir. 2000) (per curiam) (unpublished table decision). Briefing was completed on May 15, 2006, when Wireless filed its reply brief. As permitted by Rule 52(a), the court sets out its findings of fact and conclusions of law in this memorandum opinion and order.

I

Wireless sues defendants-counterplaintiffs T-Mobile USA, Inc. ("T-Mobile"), Danger, Inc. ("Danger"), and Sharp Corporation ("Sharp") for infringing the '173 patent based on defendants' manufacture and sale of the Sidekick line of devices, comprising the Sidekick and the Sidekick II.[2] Defendants assert, *inter alia*, the affirmative defense of patent invalidity, and they bring counterclaims for non-infringement and invalidity.

Wireless is the patentee and owner of the '173 patent. Wireless does not itself manufacture or sell the patented invention. Rather, it has a program of patent licensing and enforcement, whereby it seeks to license rights under the patent to manufacturers and resellers and enforces its patent rights against infringers.

T-Mobile is a wireless-communications company that sells communications devices and provides wireless voice and data services. Danger is a technology company that designs mobile communications devices and the software platforms that run them. Sharp is a consumer-electronics manufacturer.

The Sidekick was publicly released in October 2002, over one

[2]In its first amended complaint, Wireless identifies the accused devices as the "Sidekick," the "Sidekick II," the "hiptop," and the "hiptop2." 1st Am. Compl. ¶ 12. On the present record, however, it appears that "hiptop" and "hiptop2" are alternative brand names for the Sidekick and Sidekick II devices and that there are thus two accused devices rather than four.

year before the ‘173 patent issued, and was sold until the Sidekick II was introduced in September 2004. Danger designed the original Sidekick device and had it manufactured by subcontractors. Sharp, under license from Danger, manufactures the Sidekick II and sells it to T-Mobile, who in turn brands the devices with the “Sidekick” name and sells them to consumers for use on T-Mobile’s wireless voice and data network. Danger provides device software to Sharp and provides email services to T-Mobile for use on the Sidekick devices.

The ‘173 patent issued on December 16, 2003. Wireless became aware of the Sidekick device no later than January 2004, at which time Wireless contacted Danger and stated its belief that they had “overlapping intellectual property.” Ds. App. 21-22. Wireless did not file suit against defendants until January 15, 2005, and it did not file the motion for preliminary injunction until February 1, 2006, more than one year after filing suit and more than two years after learning about the accused Sidekick device.

II

In a patent infringement case, the decision whether to issue a preliminary injunction is within the court’s discretion. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001); *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1568 (Fed. Cir. 1993). “A preliminary injunction is a ‘drastic and extraordinary remedy that is not to be routinely

granted.'" *Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004) (quoting *Intel Corp.*, 995 F.2d at 1568). In deciding whether to grant Wireless's motion, the court considers (1) whether Wireless has demonstrated a reasonable likelihood of success on the merits, (2) whether Wireless will suffer irreparable harm if an injunction is not granted, (3) whether the balance of hardships tips in Wireless's favor, and (4) whether and to what extent granting the injunction would have a positive impact on the public interest. *See Amazon.com*, 239 F.3d at 1350. No individual factor is dispositive, and the court "must weigh and measure each factor against the other factors and against the form and magnitude of the relief requested." *Id.* For the preliminary injunction to issue, however, Wireless must establish each of the first two elements. *See id.*

For reasons of judicial economy and aid of appellate review, the court generally analyzes all four factors in deciding a preliminary injunction motion. *Polymer Techs., Inc. v. Bridwell*, 103 F.3d 970, 973 (Fed. Cir. 1996) (quoting *Reebok Int'l Ltd. v. Baker, Inc.*, 32 F.3d 1552, 1557 (Fed. Cir. 1994)). More limited analysis, however, may support the court's denial of a preliminary injunction. *Id.* For example, the "court need not make findings concerning the third and fourth factors if [Wireless] fails to establish either of the first two factors." *Id.* at 973-74 (citing *Reebok Int'l*, 32 F.3d at 1556).

"Because of the very nature of a patent, which provides the right to exclude, infringement of a valid patent inherently causes irreparable harm in the absence of [certain] exceptions." *Id.* at 975 (internal citation omitted). Thus if Wireless clearly establishes likelihood of success on the merits, it is entitled to a presumption of irreparable harm. *See Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1381 (Fed. Cir. 2005); *Reebok Int'l*, 32 F.3d at 1556. The presumption, however, is rebuttable. *See, e.g.*, *Reebok Int'l*, 32 F.3d at 1556. "The presumption of irreparable harm acts 'as a procedural device which places the ultimate burden of production on the question of irreparable harm onto the alleged infringer.'" *Polymer Techs.*, 103 F.3d at 974 (quoting *id.* at 1556). If the court affords Wireless the benefit of the presumption and concludes that defendants have rebutted it, the court need not decide whether Wireless has demonstrated likelihood of success on the merits. *Id.* at 974 (citing *Reebok Int'l*, 32 F.3d at 1557).

III

A

The court assumes *arguendo* that Wireless has clearly demonstrated a likelihood of success on the merits, thereby creating a presumption that it will be irreparably harmed unless a preliminary injunction issues. The presumption of irreparable harm places the burden on defendants to adduce sufficient evidence to

rebut the presumption. *Id.*

> Various types of evidence have been found sufficient for this purpose. For example, the presumption may be rebutted by evidence that (1) the non-movant has or will soon cease the allegedly infringing activities, thus making an injunction unnecessary; (2) movants have engaged in a pattern of granting licenses under the patent, such that it may be reasonable to expect that invasion of the patent right can be recompensed with a royalty rather than with an injunction; or (3) movants unduly delayed in bringing suit, thereby negating the idea of irreparability.

*Id.* (internal citations omitted).

In its brief in support of its preliminary injunction motion, Wireless relies principally on the presumption of irreparable harm, but it also maintains that it is suffering actual irreparable harm to its negotiating position in its discussions with other manufacturers over potential licenses. Wireless avers that it is currently negotiating licenses of the ‘173 patent with several device manufacturers and resellers and that its negotiating position is harmed by defendants’ continued infringement accompanied by a refusal to negotiate in good faith, “because it demonstrates to other potential licensees that a competitor can refuse a license but still continue violating the ‘173 [p]atent with impunity.” P. Br. 30.

Defendants contend the presumption of irreparable harm is rebutted because Wireless’s alleged harm to its licensing efforts does not constitute irreparable harm as a matter of law, since the

presumption does not arise until the plaintiff has made a clear showing of validity and infringement; and, even if Wireless is entitled to the presumption of irreparable harm, the presumption has been conclusively rebutted because harm to licensing efforts does not constitute irreparable harm as a matter of law, Wireless has not demonstrated any such harm, and Wireless's extraordinary delay in seeking a preliminary injunction precludes a finding of irreparable harm.

B

The court first considers the effect of Wireless's licensing efforts on the presumption of irreparable harm. A patentee's granting of a non-exclusive license is "incompatible with the emphasis on the right to exclude that is the basis for the presumption in a proper case." *T.J. Smith & Nephew Ltd. v. Consol. Med. Equip., Inc.*, 821 F.2d 646, 648 (Fed. Cir. 1987). The offer of a license demonstrates that the patentee "is willing to forgo its patent rights for compensation" and "suggests that any injury suffered by [the patentee] would be compensable in damages assessed as part of the final judgment in the case." *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995). It is the type of evidence that has been found sufficient to rebut the presumption of irreparable harm. *Polymer Techs.*, 103 F.3d at 974.

Wireless does not itself manufacture the patented invention;

indeed, it lacks the capacity to do so. P. Reply Br. 22. Rather, Wireless's business includes "a program of patent licensing and enforcement." P. Br. 30. Wireless avers in its initial brief that it "is currently negotiating such licenses with several device manufacturers and resellers." *Id.* Wireless's willingness to license the '173 patent on a non-exclusive basis suggests that it is willing to accept royalties in lieu of exclusion.

Wireless asserts in its reply brief that the right to exclude is more critical in the early stages of a new product category because a "first-mover" is often able to entrench itself when early customers have no choice but the first-mover's products. Wireless alleges that it was on the leading edge of designing new handheld mobile computing devices that overcame the data entry and output problems associated with previous devices. It avers that it has pending patent applications for a system to deliver content to these devices and maintains that it must be able to license its patents to first-movers and provide them with exclusive rights to manufacture and sell the invention. Wireless argues that if defendants are permitted to continue manufacturing and selling infringing devices during the course of the litigation, the infringing devices will become entrenched, and Wireless will lose its ability to guide the market for its invention, license its new technology related to content delivery, or leverage its relationships with its licensees to expand the uses of its

invention. Wireless posits that this cannot be remedied by damages.

Wireless's argument might have more bearing to this case if the invention's product category were actually in its early stages. But defendants began selling one of the accused devices in October 2002, and several other devices that Wireless contends infringe the '173 patent have been and continue to be manufactured and sold, as evidenced by Wireless's other pending lawsuits in this court. *See Wireless Agents, L.L.C. v. Sony Ericsson Mobile Commc'ns AB*, No. 3:05-CV-0289-D (N.D. Tex.); *Wireless Agents, L.L.C. v. Kyocera Wireless Corp.*, No. 3:05-CV-0290-D (N.D. Tex.). Moreover, if defendants' devices have become or are becoming entrenched, it is due in part to Wireless's own undue delay in bringing this suit and in seeking a preliminary injunction, as the court explains below.

Wireless admits that at this point it is not seeking to license the '173 patent on an exclusive basis; rather, since the patent issued in December 2003 Wireless has "sought to . . . licens[e] rights under the '173 [p]atent to *several* computing device manufacturers and resellers, P. Br. 2 (emphasis added), it is "currently negotiating . . . licenses with *several* device manufacturers and resellers," *id.* at 30 (emphasis added), and it desires to "leverage its relationships with its *licensees*," P. Reply Br. 23. The intended result of a "program of patent licensing," P. Br. 30, would be royalties. If an infringing

manufacturer or reseller refuses to pay Wireless for a license, Wireless may be recompensed for its loss of royalties through damages in a successful infringement action. Because Wireless can recover through damages what it seeks from its licensing efforts——royalties from a non-exclusive license——the court holds that defendants have rebutted the presumption of irreparable harm. *See Polymer Techs.*, 103 F.3d at 974.

C

Defendants additionally maintain that Wireless's delay in seeking a preliminary injunction rebuts the presumption of irreparable harm. "[D]elay in seeking a remedy is an important factor bearing on the need for a preliminary injunction." *High Tech Med. Instrumentation*, 49 F.3d at 1557. "Absent a good explanation, . . . a substantial period of delay . . . militates against the issuance of a preliminary injunction by demonstrating that there is no apparent urgency to the request for injunctive relief." *Id.* Evidence of an undue delay in bringing suit may be sufficient to rebut the presumption of irreparable harm. *See Polymer Techs.*, 103 F.3d at 974.

Defendants submit evidence demonstrating that Wireless became aware of the accused devices no later than January 2004. Robert Kay ("Kay"), one of the inventors listed on the '173 patent, sent Danger an email on January 11, 2004 stating that he was aware of Danger's Sidekick device and indicating that Danger and Wireless

had "overlapping intellectual property." D. App. 21-22. Kay was so surprised by the similarity between Danger's patent and his own that he stated in the email: "I don't know how both patents issued." *Id.* at 22. Wireless's counsel also sent Danger a January 15, 2004 letter discussing the '173 patent and asking to "meet and discuss a business arrangement regarding [their] technology." *Id.* at 45-46.

Although Wireless knew of the Sidekick device as early as January 2004, it nonetheless did not file this action until January 15, 2005, one year later. Wireless did not file the present motion until February 1, 2006, over one year after filing suit and over two years after first learning about the Sidekick device.

Wireless contends in its reply brief that it has a good explanation for the delay: it was caused by defendants' counsel. Wireless avers that it repeatedly contacted Danger and its counsel to meet and confer, Danger's counsel continuously promised meaningful talks and then came up with excuses why they could not occur, moving for a preliminary injunction in light of Danger's counsel's promises to negotiate in good faith would not have been a wise business decision, and Wireless did not move for preliminary injunctive relief "as a token of its own good faith." P. Reply Br. 24. Beyond these statements in its brief, however, Wireless does not direct the court to *evidence* that defendants are responsible for the delay, nor does it seek leave to file with its reply brief

a supplemental appendix containing such evidence. Even if Wireless did proffer evidence that defendants repeatedly promised and postponed substantive negotiations, and even if this evidence would justify some delay in seeking injunctive relief, it would certainly not support Wireless's delay of over one year from the time of filing suit until seeking a preliminary injunction. Wireless's undue delay "demonstrat[es] that there is no apparent urgency to the request for injunctive relief," *High Tech Med. Instrumentation*, 49 F.3d at 1557, and is of itself sufficient to rebut the presumption of irreparable harm, *see Polymer Techs.*, 103 F.3d at 974.

D

Even if neither Wireless's licensing efforts nor its delay in seeking injunctive relief is alone sufficient to rebut the presumption of irreparable harm, the court holds that the presumption is rebutted when these circumstances are viewed together. *Cf. T.J. Smith*, 821 F.2d at 648 (stating presumption of irreparable harm rebutted by 15-month delay in seeking preliminary injunction and grant of licenses).

Affording Wireless the benefit of the presumption of irreparable harm, the court concludes that defendants have rebutted the presumption and that Wireless will not suffer irreparable harm from the denial of a preliminary injunction. Because this conclusion is sufficient to deny Wireless's motion, the court does

not reach the remaining factors. *Polymer Techs.*, 103 F.3d at 973-74 ("[A] trial court need not make findings concerning the third and fourth factors if the moving party fails to establish either of the first two factors. Similarly, a trial court need not make a finding on a movant's likelihood of success on the merits if it affords the movant the benefit of the presumption of irreparable harm and properly finds that presumption rebutted by the non-movant." (internal citations omitted)).

IV

Wireless filed on May 26, 2006 a motion for leave to submit rebuttal expert report. Wireless seeks leave to submit the report of Gerhard Deffner, Ph.D. ("Dr. Deffner"), in order to rebut the expert report defendants submitted with their response to the preliminary injunction motion. Dr. Deffner's report relates only to issues associated with Wireless's likelihood of success on the merits. Because the court does not reach this factor in denying Wireless's motion for preliminary injunction, the court denies as moot Wireless's motion for leave to submit Dr. Deffner's report.

Wireless filed on June 1, 2006 a motion for evidentiary hearing on its motion for preliminary injunction and on claim construction. For similar reasons as make it unnecessary to consider Dr. Deffner's report, and because a hearing is unnecessary under the provisions of the court's February 2, 2006 order, the motion is denied.

* * *

Wireless's February 1, 2006 motion for preliminary injunction is denied.

**SO ORDERED.**

June 6, 2006.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE